IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| APICAL BIOTEK, LLC, JUSTIN GIVENS, | )<br>) |
| Plaintiffs, | )<br>)   2:22-CV-01737-MJH |
| vs. | )<br>)<br>) |
| MAITRI HOLDINGS, LLC, MAITRI GENETICS, LLC, MAITRI MANAGEMENT, LLC, MAITRI MEDICINALS, LLC, | )<br>)<br>)<br>) |
| Defendants, | |

OPINION

Plaintiffs, Apical Biotek, LLC and Justin Givens, bring the within action for Trade Secret Misappropriation under the Defend Trade Secrets Act (Count I) and the Pennsylvania Uniform Trade Secrets Act (Count II), Breach of Contract (Count III), Conversion of Confidential Information (Count IV), and Unjust Enrichment (Count V) against Defendants, Maitri Holdings, LLC, Maitri Genetics, LLC, Maitri Management, LLC, and Maitri Medicinals (collectively "Maitri"). (ECF No. 1). Defense has moved for summary judgment on all counts pursuant to Fed. R. Civ. P. 56. (ECF No. 41). Plaintiffs have moved for partial summary judgment, as regards Count III, pursuant to Fed. R. Civ. P. 56. (ECF No. 47). Those matters are now ripe for decision.

Following consideration of Defense's Motion for Summary Judgment (ECF No. 41), Plaintiffs' Motion for Partial Summary Judgment (ECF No. 47), the respective briefs (ECF Nos. 42, 48, 53, 58, and 59), redacted and unredacted concise statements of material facts and respective responses (ECF Nos. 43, 49, 52 through 57), the relevant pleadings, and for the

following reasons, Plaintiffs' Motion for Partial Summary will be denied, and Defense's Motion for Summary Judgment will be granted.

I. Background

Plaintiffs assert two categories of claims: contractual claims (Counts III and V), and trade secret claims (Counts I, II, and IV).

Apical Biotex LLC is a limited liability company with Mr. Givens as its only member. In May 2019, Mr. Givens and Apical ("Plaintiffs") began working with Maitri as a cannabis consultant. Maitri contemporaneously decided to construct and operate a tissue culture lab. Plaintiffs consulted for Maitri regarding the set up and operation of the lab. After Maitri established the lab, Plaintiffs supplied a hormonal "gel," which was used to help grow medical marijuana. Maitri paid Plaintiffs approximately $571,588.47 for the consulting services and gel material. (ECF No. 56 at ¶¶ 118 and 119). In fall of 2019 and continuing into 2021, Maitri and Plaintiffs engaged in negotiations for Mr. Givens's base compensation and for his receipt of equity in one of Maitri's companies. However, notwithstanding said negotiations, the parties never executed a written agreement. Mr. Givens asserts that any written agreement would have only memorialized the terms for an oral agreement regarding a base compensation and equity that he claims he had already reached with Maitri.

With regard to trade secrets, Plaintiffs assert that Defendants misappropriated the following alleged trade secrets:

1. The hormonal formulas referenced in the Complaint, which were used to propagate the TC genetics and form the basis of the entire function of the TC lab. This was shared and stored physically on-site starting January, 2020. They continued without permission to use these without payment or consent beyond January of 2021. ("hormonal formulas")

2. The phase-based system for tissue culture (TC) propagation, including the results of multiple years of extensive research trials to create an ideal

> propagation timing for specific plant genetics. These trade secrets were shared through SOP's and in-person training to Maitri employees starting August of 2020. ("SOP")
>
> 3. Laboratory operating procedures and techniques for TC propagation. This was an on-going training with provided SOPs made specifically for Maitri starting January, 2020. ("SOP")

(ECF No. 56 at ¶ 111).

Plaintiffs and Defendants now cross-move for summary judgment on Plaintiffs' Breach of Contract claim (Count III). Defendants also move for summary judgment on Plaintiffs' Unjust Enrichment claim (Count V) and Trade Secret claims (Counts I, II, and IV).

II. Relevant Standard

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted). Additionally, for a factual dispute to be material, it must have an effect on the outcome of the suit. *Id.* In reviewing and evaluating the evidence to rule upon a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted). However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion. Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 256-57 (internal citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of the party." *Id.* at 251 (internal citation omitted).

Summary judgment is the time to "put up or shut up." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.").

III. Discussion

    A. Breach of Contract (Count III)

Both Plaintiffs and Maitri move for summary judgment on Plaintiffs' Breach of Contract claim. Maitri contends that Plaintiffs cannot establish any alleged oral agreement to transfer equity to Plaintiffs. In particular, Maitri maintains that there was no "meeting of the minds" to establish the necessary essential terms for the agreement. Maitri further argues that Plaintiffs have produced no evidence of contract damages. In particular, Maitri asserts that Mr. Givens

only offers a lay opinion on what he thinks the equity is worth and provides no supporting documentation or expert report.

Plaintiffs argue there is no genuine issue of material fact to challenge 1) that the parties formed a valid verbal agreement, with included definite essential terms, 2) that Maitri breached said agreement, and 3) that Plaintiffs suffered damages. Plaintiffs claim damages on this breach of contract claim equal to the "value of the 2% equity; entitled to at least $1,500,000 or more based on past valuation of other companies, based on past acquisition offers allegedly made to Maitri but not accepted, based on past, current and/or future potential values." (ECF No. 56 at ¶ 154). Plaintiffs maintain that Maitri's financial documents, which were produced in discovery, establish a per share valuation based upon transactions of other shareholders.

In response, Maitri contends that Plaintiffs have not produced evidence to show that Plaintiffs or Defendants would have sold their shares at the time when "other shareholders" executed their transactions; or that Plaintiffs would have secured purchasers for their shares. Maitri further asserts that Mr. Givens is not qualified to testify regarding the value of Defendants' business or shares; and, because Plaintiffs have not produced any documents to support their damages claim, Plaintiffs' Count III fails.

To support a claim for breach of contract, Plaintiffs must establish: "(1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (1999)). To prove damages, a plaintiff must give a factfinder evidence from which damages may be calculated to a "reasonable certainty." *ATACS Corp. v. Trans World Communications, Inc.,* 155 F.3d 659, 668 (3d Cir.1998). "At a minimum, reasonable certainty embraces a rough calculation that is not 'too speculative, vague or contingent' upon some unknown factor." Although mathematical certainty

5

is not necessary to find that the element has been met, a plaintiff must still introduce "sufficient facts upon which the [factfinder] can determine the amount of damages without conjecture." *Delahanty v. First Pennsylvania Bank*, N.A., 464 A.2d 1243, 1257 (Pa. Super. 1983). Summary judgment is properly entered against a non-moving party when that party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Here, the parties present sufficient evidence to establish questions of fact relative to the issue of whether the parties reached a meeting of the minds to establish mutually agreed upon terms to establish a contract.  However, Plaintiffs' contract claim ultimately falters, because they have not met their burden regarding damages.  Plaintiffs rest their case, claiming contract damages for "value of the 2% equity; entitled to at least $1,500,000 or more based on past valuation of other companies, based on past acquisition offers allegedly made to Maitri but not accepted, based on past, current and/or future potential values."  Plaintiffs' assertions are unaccompanied by any evidence that would assist a factfinder to determine damages to a reasonable certainty.   They instead argue that they are entitled to the "same equity provided to others."  However, Plaintiffs' contentions are couched in vague terms like "numerous individuals," "other independent contractors," and "other companies."   Plaintiffs provide no information or parameters for these terms.  Instead, the factfinder would, by necessity, rely upon pure conjecture and speculation to determine any valuation for Plaintiffs' alleged equity stake entitlement.   Any such valuation determination necessitates expert analysis and opinion. Plaintiffs have provided no expert report or opinion to establish the damages element for their claim.  Therefore, without such competent and sufficient evidence to establish a question of

material fact sufficient to meet Plaintiffs' burden of proof as to damages, Plaintiffs' Breach of Contract claims fails as a matter of law.

Accordingly, Plaintiffs' Partial Motion for Summary Judgment will be denied, and Maitri's Motion for Summary Judgment, as regards Count III, Breach of Contract, will be granted.

### B. Unjust Enrichment (Count V)

Maitri argues that Plaintiffs have failed to demonstrate a claim for unjust enrichment, because Plaintiffs received full payment for services that they performed for Maitri. Plaintiffs counter that they were not "paid in full," because, contrary to Maitri's assertion, Plaintiffs were compensated at less than their standard consulting rate, and Plaintiffs did not receive full value for the services that were provided to Maitri. Namely, Plaintiffs contend that Maitri obtained a benefit from Plaintiffs, i.e. an established operational tissue culture facility, trained employees, and cannabis genetics.

A claim for unjust enrichment must establish the following elements: (1) benefits conferred upon defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Harry Miller Corp. v. Mancuso Chems. Ltd.*, 469 F. Supp. 2d 303, 319 (E.D. Pa. 2007) (citing *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999)). The appropriate remedy for unjust enrichment thus requires the defendant to pay the value of the benefit conferred. *E.g., Styer v. Hugo*, 422 Pa.Super. 262, 619 A.2d 347, 350 (1993); *Fleming Steel Co. v. Jacobs Eng'g Grp., Inc.*, 373 F. Supp. 3d 567, 604 (W.D. Pa. 2019).

"An unjust enrichment plaintiff must describe the benefit conferred with some specificity; the factfinder needs a sufficient evidentiary basis from which to calculate the value of the benefit conferred. "[U]njust enrichment claims cannot be based on 'speculative' or 'intangible' benefits." *Morlok v. City of Philadelphia*, No. 20-2973, 2022 WL 252185, at *5 (3d Cir. Jan. 26, 2022); *Carruthers v. Messner Enters. Northgate, LLC*, No. CI-09-07812, 2013 WL 10872127, at *11 (Pa. Ct. Com. Pl. Nov. 19, 2013).

Here, the record supports that Plaintiffs received payment from Maitri for their services and materials. Plaintiffs do not dispute the receipt of $571,588.47, and that all invoices were paid in full. Plaintiffs' unjust enrichment claim requires Plaintiffs to establish that Defendants received a benefit; however, Plaintiffs cannot establish their claim by demonstrating a lack of payment. While Plaintiffs quantifies an alleged "discount rate," they only offer conclusory claims regarding identification or quantification of benefits that Maitri may have received. Further, with regard to a "discount rate," Plaintiffs produced no documents (such as invoices) reflecting a discounted rate and have not adduced any evidence of payment or internal accounting that Apical's accounts receivables tracked at a 50% discount. The record is devoid of any evidence to support a quantifiable and calculable benefit to Maitri attributable to Plaintiffs' claim services. Absent such evidence, Plaintiffs', Count V claim for Unjust Enrichment, fails.

Accordingly, Maitri's Motion for Summary Judgment, as regards Count V, Unjust Enrichment, will be granted.

C.  Trade Secret Claims (Counts I, II, and IV)

Defendants' contend that Plaintiffs cannot establish their trade secret claim,[1] because (i) Plaintiffs have provided no evidence to establish any question that the information provided by Plaintiffs were not generally known in order to qualify that such information was a trade secret; (ii) there is no evidence that Plaintiffs took reasonable efforts to preserve the alleged trade secrets; and (iii) there is no evidence that Defendants are currently using any alleged trade secrets.

Again, Plaintiffs have alleged the following trade secrets:

1. The hormonal formulas referenced in the Complaint, which were used to propagate the TC genetics and form the basis of the entire function of the TC lab. This was shared and stored physically on-site starting January, 2020. They continued without permission to use these without payment or consent beyond January of 2021. ("hormonal formulas")

2. The phase-based system for tissue culture (TC) propagation, including the results of multiple years of extensive research trials to create an ideal propagation timing for specific plant genetics. These trade secrets were shared through SOP's and in-person training to Maitri employees starting August of 2020. ("SOP")

3. Laboratory operating procedures and techniques for TC propagation. This was an on-going training with provided SOPs made specifically for Maitri starting January, 2020. ("SOP")

(ECF No. 56 at ¶ 111).

Under the Defend Trade Secrets Act (DTSA) a plaintiff must prove: "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that 'is related to a product or service used in or intended for use in, interstate or foreign commerce'; and (3) the misappropriation of that trade

---

[1] Plaintiffs also assert a common law claim for conversion of confidential information (Count (IV)). Because said claim duplicates the trade secret claims, this Court's analysis is the same as under the trade secret statutory claims.

secret, defined broadly as the knowing improper acquisition or use or disclosure of the secret." *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (citations omitted).

Similarly, a claim under the Pennsylvania Uniform Trade Secrets Act (PUTSA) requires: "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff." *Ecosave Automation, Inc. v. Delaware Valley Automation, LLC*, 540 F. Supp. 3d 491, 500 (E.D. Pa. 2021) (citations and quotations omitted). Conversion is defined as "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc.*, 2001 Pa.Super. 131, 777 A.2d 1090, 1095.

1. Trade Secret Existence

To determine whether information qualifies as a "trade secret", a court considers: (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the value of the information to the owner and his competitors; (4) the amount of effort or money expended in developing the information; and (5) the ease or difficulty with which the information can be acquired or duplicated by others. *Scranton Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 190 F. Supp. 3d 419, 439 (M.D. Pa. 2016) (citations omitted). Plaintiffs cannot simply state their processes are "trade secrets" without providing any evidentiary support. *See Big Vision Private Ltd. v. E. I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 258 (S.D.N.Y. 2014) aff'd sub nom. *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 610 F. App'x 69 (2d Cir. 2015) (holding that upon disclosure there must be sufficient specificity by the party to whom the secret belongs to avoid transgressing its boundaries).

Presently, Defendants contend that Plaintiffs have produced no evidence that the "hormonal formulas" or SOPs qualify as trade secrets. Plaintiffs argue that the SOPs were trade secrets, because Defendants acknowledged their proprietary nature through email communications regarding non-disclosure agreements (NDAs). Plaintiffs assert that proprietary SOPs were provided to Maitri under confidentiality agreements that multiple of Defendants' laboratory technicians had signed. Plaintiffs do not address any arguments regarding "hormonal formulas" in their response to Defendants' Motion for Summary Judgment.

Here, Plaintiffs have provided no evidence to establish any question of material fact. Plaintiffs have submitted mere conclusory allegations or assertions that the SOPs were trade secrets. Such ipse dixit is simply not sufficient for plaintiff to meet their burden.

Consistent with the law on trade secret misappropriation, Plaintiffs cannot merely speak a trade secret into existence. Plaintiffs sole argument rests on Plaintiffs' conclusion that their requests for NDAs converts Plaintiffs' SOPs into trade secrets. However, Plaintiffs disclosed the SOPs to Maitri over a year before Plaintiffs proposed any NDAs. Further, said NDAs were not directed to the Defendants; rather, Plaintiffs only requested individual employees of Defendants to sign such, in their individual capacity. Further, Plaintiffs point to no other evidence or testimony to show any disputed issue of fact germane to the other considerations to support the finding of a trade secret in this case. Therefore, the Court concurs with Defendants' position that Plaintiffs have not met their burden to establish the SOPs were trade secrets. As such, Plaintiffs' claim fails on Defense's motion for summary judgment.

Further, Plaintiffs' failure to respond to Defense's Motion and arguments regarding the claimed trade secret of hormonal formulas, constitutes an abandonment and waiver of said claim. *See Adams v. Pennsylvania*, 2009 WL 2707601, *8 (M.D.Pa.2009) (citing *Player v. Motiva*

*Enters., LLC*, 240 F. App'x 513, 522 n. 4 (3d Cir.2007); *Seals v. City of Lancaster*, 553 F.Supp.2d 427, 432–433 (E.D.Pa.2008); *GNC Franchising LLC v. Khan*, No. 05–1341, 2008 WL 612749, *8–9 (W.D.Pa.2008)).

Accordingly, Defendant's Motion for Summary Judgment, as regards Counts I, II, and IV, will be granted.

2. Use

Defendants next argue that, even if Plaintiffs could prove the existence of their alleged trade secrets, Plaintiffs have produced no evidence that Defendants used any of the alleged trade secrets after Plaintiffs stopped consulting. Plaintiffs argue that Defendants' retention and storage of the alleged trade secrets evidences use and misappropriation. Plaintiffs maintain that there is no dispute that Defendants currently hold Plaintiffs SOPs in digital format.

As regards Plaintiffs' trade secret claims (Counts I, II, and IV), the DTSA does not define the term "use." "In the absence of such a definition, we construe a statutory term in accordance with its ordinary or natural meaning." *F.D.I.C. v. Meyer*, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). "Use" ordinarily means "[t]o employ for the accomplishment of a purpose," Use, BLACK'S LAW DICTIONARY (10th ed. 2014),17 or to "benefit from," Use, OXFORD: LEXICO (also defining use to mean "[t]ake, hold, or deploy (something) as a means of accomplishing a purpose or achieving a result; employ," or "[e]xploit (a person or situation)"; defining "make use of" as "[u]se for a purpose" or "[b]enefit from") for one's own advantage"). *See Bonkowski v. Oberg Indus., Inc.*, 787 F.3d 190, 200 (3d Cir. 2015) ("We look to dictionary definitions to determine the ordinary meaning of a word." (internal quotations omitted)).

When interpreted specifically in the context of trade secret misappropriation, the term "use" has been broadly defined as any exploitation of the trade secret that is likely to result in

12

injury to the trade secret owner or enrichment to the defendant[.] ... Thus, marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret ... all constitute 'use.'" *Oakwood Labs, LLC v. Thanoo*, 999 F.3d 892, 908–09 (3d Cir. 2021).

Here, Plaintiffs' argument on "use" rests upon Defendants' digital retention and storage of the alleged trade secrets. To sufficiently prove "use," Plaintiffs must produce some evidence that Defendants engaged in some category of conduct wherein Plaintiffs' trade secret was being used. Plaintiffs only evidence concerns Defendants' retention and storage of the purported trade secrets. Such evidence is insufficient to establish use under the DTSA. Courts have held that "the failure to return lawfully acquired information does not constitute 'misappropriation' of that information under the DTSA." *Packaging Corp. of Am., Inc. v. Croner*, 419 F.Supp.3d 1059, 1066 (N.D. Ill. 2020); see also *Apple Inc. v. Rivos, Inc.*, 2023 WL 5183034, at *7 (N.D. Cal. Aug. 11, 2023). Plaintiffs must set forth at least some evidence to support a jury question on trade secret use; however, the record is absent any such evidence. Thus, even if Plaintiffs had sufficiently established a material question of fact as to the evidence to establish a trade secret, which the Court above found Plaintiffs did not, Plaintiffs' claim would also fail, because Plaintiffs' evidence does not support the "use" element for their trade secret claims.

Accordingly, Defendants' Motion for Summary Judgment, as regards Plaintiffs' trade secret and conversion claims (Counts I, II, and IV), will be granted.

IV. CONCLUSION

Following careful consideration of the pending motions and record set forth therein, and for the reasons stated above, Plaintiffs' Motion for Partial Summary Judgment, as to Count III,

13

will be denied, and Defendants' Motion for Summary Judgment, as to Counts I, II, III, IV, and V, will be granted. A separate order will follow granting judgment in Defendants' favor.

Dated: February 6, 2025

                                                                                Marilyn J. Horan
                                                             United States District Judge